E. S. H.

---

GERMAN-AMERICAN BANK *v.* CITY OF BRENHAM.

*(Circuit Court, W. D. Texas.   April Term, 1888.)*

1. MUNICIPAL CORPORATIONS—BONDS—POWER TO ISSUE.
    The defendant city, being authorized to borrow money for "general purposes," had power to issue commercial bonds for the sums borrowed which will legally bind the corporation.
2. SAME—CONSTITUTIONAL LAW.
    The city was chartered in 1873.  The state constitution of 1876 provides that such cities as Brenham may "collect an annual tax to defray the expenses of their local government, not to exceed for any year one-fourth of one per cent."  The bonds were issued in 1879.  *Held,* that the said provision did not forbid the defendant city to borrow money for "general purposes," or to defray the expenses of its local government.
3. SAME—INNOCENT PURCHASER—NOTICE.
    The money borrowed on the bonds was expended unlawfully by the city council to aid a railway company.  The whole series of bonds and coupons were purchased by Mensing before any of the coupons were overdue.  While Mensing held them, some $2,000 of the coupons became past due and unpaid, and in that condition Mensing pledged the bonds and coupons to plaintiff to secure the payment of borrowed money.  *Held,* that if the jury find that Mensing had knowledge of the fact that the city council, in borrowing money on the bonds, intended to expend the money obtained from the bonds, or did expend the same, in the aid of a railway company, the plaintiff, as to the dishonored coupons, should not recover.
4. SAME—PLEDGE.
    The pledgee, the plaintiff, in relation to the dishonored coupons, must be charged with such knowledge of the issuable facts as the jury may believe the pledgeor, Mensing, should be charged with.
*(Syllabus by Boarman, J.)*

At Law.   Trial by jury.
*Henry Sayles* and *Davidson & Minor,* for plaintiff.
*Maxey & Fisher* and *Peeler & Peeler,* for defendant.

BOARMAN, J., *(orally charging the jury.)*   The defendant, in his plea in abatement, sets up that the plaintiff does not own or hold the bonds in such a way as to entitle him to sue in this court.   This plea presents an

issue of fact which you are to determine. I charge you that the bonds and coupons in question are on their face commercial paper. The holding of such a paper, the employment of counsel to sue on these coupons by the bank, the failure of defendant to show or suggest that any one else is the owner of the coupons, makes a *prima facie* case in favor of plaintiff. If you find that Mensing was the purchaser and owner of the coupons, and that he pledged them to secure a loan made to him by the bank, and that in fact Mensing no longer claims or owns the coupons, you will find for the plaintiff. The failure to suggest that any one else owned the bonds or coupons, or to name any one else as their owner, is a strong circumstance in favor of the plaintiff.

Now, upon the other issues, I charge you that bonds to the amount of $15,000, with interest coupons attached, were issued in 1879 by the defendant city, then 'operating under charter of 1873. In that charter section 2 says "that the city council shall have power and authority to borrow money for general purposes, not exceeding $15,000.00, (fifteen thousand dollars,) on the credit of the city." The constitution of the state, 1876, allows such cities as Brenham to "collect an annual tax to defray the expenses of their local government not to exceed for any year one-fourth of one per cent." The power of the city to borrow money carries with it the authority to issue bonds in this case. It may be that the limitation of the power to tax beyond one-fourth of 1 per cent. impairs the ability of the defendant to pay the bonds and coupons; but I do not think it denies the capacity of the corporation in 1879 to issue the bonds as commercial paper, and bind the constituency to the payment thereof. Hence you will begin your consideration of the issuable facts with the fixed opinion that the city must pay the coupons now sued on in full, unless you shall find adversely to plaintiff on the single issue I shall directly present to you. If you find adversely to plaintiff on that issue, recovery can be had for only a part of the coupons sued on. Before stating that issue, let us sum up some of the matters of fact that are not disputed. Such evidence shows that the city, under the charter of 1873, issued, by ordinance, in 1879, the bonds, the coupons on which this suit is brought; that the city, in pursuance of ordinances, sold the bonds, and that ——— of the proceeds of the sale were expended by the city council unlawfully; that is, in aid of a railway company; that Giddings bought $5,000 of the bonds in August, 1879, and that Mensing became the owner of the whole issue before March, 1883, the interest coupons having been paid up to that date; that while Mensing held and owned the coupons of the whole issue, three series of them, amounting to $2,250, became due and were unpaid; these unpaid coupons were due as follows: March, 1883; September, 1883; March, 1884; and Mensing pledged them after the last date to the plaintiff to secure the payment of a loan made by the bank. The defendant, having shown that some of the coupons were past due before the bank became the holder of them, has offered evidence to show that Mensing was charged with knowledge of such facts attending the issue and sale of the bonds, and the unlawful purposes from which the money obtained from their sale was expended by the city

council, as should forbid the bank, to whom Mensing pledged the overdue coupons to recover on the past due coupons, amounting to $2,250.

Now, then, the single issue of fact which I shall present to you is, does the evidence show that Mensing, who purchased the bonds before the series of coupons mentioned were past due, and in whose hands they had become due, knew at any time before the purchase of the coupons that the city council in causing the bonds to be issued ostensibly for "general purposes," as is recited on the face of the bonds, really intended that the proceeds of the bonds should and would be used not for "general purposes," but that the proceeds were to be expended, and were expended in the aid of the railway company? In considering this matter you must keep in mind that the acts or intentions of the city council, acting as an official body in the exercise of powers delegated to it, can be ascertained in but one way, that is by a fair reading of the city ordinances. Such a reading of the ordinances relating to these bonds shows clearly that the bonds were issued for "general purposes," and you will be authorized, when considering the rights of an innocent purchaser, one purchasing before maturity and for value, to conclude that the corporation issued, and intended to issue, them for such purposes as are stated in the bonds. Such a conclusion would be entitled to the force of a legal presumption in favor of the plaintiff if the pledgeor, Mensing, had come into the ownership or possession of the coupons before any of them were overdue. It being admitted that $2,250 of the coupons were overdue when they left the hands of Mensing and came to the German Bank, you are advised to put such a conclusion aside, and examine all the evidence illustrating the issue I have presented. You may inquire into the acts, sayings, purposes, or intentions of any one or all of the several members of the city council, as individuals, for the purpose only of ascertaining whether or not Mensing had any understandings with them, or any one of them, to the effect that the corporation would issue the bonds ostensibly for a lawful purpose, but that in fact the money obtained from the sale of the bonds should or would be expended in aiding a railway company. You may inquire, too, whether Mensing, at any time before he bought the bonds and coupons, knew that the money coming from the sale of the bonds had been at any time expended by ordinances unlawfully passed by the city council. If, upon considering such testimony, you should find that Mensing was charged with such knowledge, at any time before he purchased the bonds, then you will deny the plaintiff any recovery on the $2,250 of coupons which were overdue, but you will allow plaintiff the balance of his demand. Your conclusion upon that single issue will control your verdict. By way of further defense the defendant contends that the city did not comply with that article of the constitution which provides that all cities, before incurring a debt, shall provide by ordinance for securing the payment of the interest thereon, and for a sinking fund to pay the principal, and therefore the plaintiff was charged with the knowledge of their invalidity. The plaintiff relies on the following ordinance to show compliance with the requirements of the constitution:

"Sec. 7. That there be and is hereby appropriated out of the general *ad valorem* tax of the city one-eighth of one per cent., or so much thereof as may be necessary, on the assessed value of the taxable property of the city as a special interest and sinking fund with which to pay the interest on said bonds, and liquidate the same, and said fund shall be kept separate from the other funds of the city, and shall be used for no other purpose. Sec. 8. That this ordinance go into effect, and have force from and after its passage."

I charge you that the ordinance read to you, in connection with the other ordinances that I shall not read to you, shows a substantial and sufficient compliance with the law, and as to this defense you will find for plaintiff.